Good morning and may it please the court, Damon Andrews, the petitioner, and Nelson Quinteros. With the court's permission, I'd like to reserve three minutes of time for rebuttal. For the last year and a half, the government has persisted in its efforts to deport Mr. Quinteros, despite there being no constitutional basis for doing so. The first immigration judge held that for Mr. Quinteros, a crime of conviction, to constitute an aggravated felony under 8 U.S.C. 1101-A43, it quote, must fit the definition at section 16-B, referring to 18 U.S.C. Can you start off with whether on the jurisdiction issue, because it really seems like there's two issues here, are there not? Sure. So I think the court has jurisdiction for three reasons. First of all, the Fourth Circuit in ETN provides a perfect roadmap for jurisdiction, which this court adopted in Walters. In ETN, just like here, the petitioner checked the box on the form I-851, saying, I contest my deportability. Now in ETN, the petitioner did not raise the aggravated felony issue until the petition for review before the Fourth Circuit. Mr. Quinteros has done more than that here. He raised it below. In Walters, which is a decision from this court applying ETN, the petitioner did not even check the box on the form I-851, and the court still reached the aggravated felony issue. Well now, in the first hearing before the immigration judge, the issue was raised, right? In this case, yes. Yes. And it was never appealed. When the appeal went to the BIA, that issue was not one of the ones that was appealed. That's right. Under this court's law, it is exhausted nonetheless. The BIA, in the most recent decision, so the case went up to this court, was remanded in 2017, goes back down. In the most recent decision, the BIA passed on the aggravated felony issue on the front page of the opinion. And this court's decisions in cases like Garza and the Joseph case from 2006 say that is enough. In the Joseph case, I'm sorry, the Lynn case, which the government cites, if the BIA sua sponte raises the issue, it is preserved and exhaustion is considered to be met. So even where Mr. Quinteros did not raise, and I believe the language from Lynn is where the petitioner, quote, failed to raise it, if the BIA sua sponte addresses it, which it did here on page one of the opinion below, then the issue is exhausted. And I think even setting ETN and the exhaustion issue aside, there's still demaia. And that was raised to the board below. The government argues on page 38 of its brief that, quote, the remand did not limit the scope, or this court's remand did not limit the scope of remand to the BIA. And so the government now would argue that the BIA would be able to consider this court's decision in Myrie, but respectfully, not the Supreme Court's decision in Demaia, which again, invalidated the only basis, constitutional basis, for removal. And on the merits of the aggravated felony issue, let's... Let me stay with the jurisdiction for a second. Sure. He fills out the, checks the boxes, a couple boxes on form I-851, and he doesn't attach any documents, which he had the opportunity to do at the last box, where you could attach documents in support of what you're suggesting. What happens when you don't attach documents? It's unclear to us what documents the government would have him attach. He challenged removability not on a factual basis, but on a purely legal basis. Does the crime of conviction 18 U.S.C. 1959, A-6 constitute an aggravated felony under 8 U.S.C. 1101, A-43? And so, short of case law, Taylor, his conviction, which DHS was already aware of, it's unclear to us what documents the government would even have had him attach when it's a purely legal challenge. And you're saying I-851 is strictly for factual issues? That's right. And I think the court in ETN walks through each of the opportunities to challenge removability in the I-851. None are legal. And I think that the court in ETN is also persuasive in that the DHS officers reviewing that are not even required to be lawyers. So we then would have non-lawyers trying to apply the categorical approach to a statute of conviction. That just doesn't seem right. So, yes, those are for factual challenges. Legal challenges may be raised to this court. And again, he did raise it before the first IJ. Now, the statute of conviction here was what, 1959, A-6? Correct. And ETN doesn't help you, at least by analogy, with regard to the merits. That's right. Because it deals with what, A-5? That's correct. I think ETN, well, it looks at- Or is it McCollum that deals with A-5? McCollum that deals with A-5. Sorry. ETN looks at just the generic definition of conspiracy. Although McCollum then goes differently and looks too. Sure. What is your argument on that issue, on the merits? Our argument is that there's ETN and then there's the Supreme Court. Cases like Taylor, Moncrief, Duenas-Alvarez, each of the last two, which were immigration cases, are clear that the generic definition of a crime is the definition adopted by the contemporary meaning of most states. And in the Graves case, which should draw off of the 2017 decision by you, the court looked to Garcia-Santana, the Ninth Circuit case, and to the Sixth Circuit. And the court said that we hold that, quote, the most important factor in defining the generic definition of an offense is the approach of the majority of most of the state statutes. And Garcia-Santana did the work here. It walked through 54 U.S. jurisdictions and found that 40 of them require an overt act. ETN had Garcia-Santana in a footnote and sort of brushed it aside. But if you look at the rationale of ETN versus the rationale of Garcia-Santana, in the Supreme Court, Taylor, Moncrief, Duenas-Alvarez, each of them looks to the definition by most of the states. And I think it's important here that the two concerns raised in ETN have been rebuffed by the Supreme Court. ETN first was concerned about federal supremacy and that allowing a, quote, straw poll of the states to define a federal statute. But that's exactly what the Supreme Court says courts should be doing. Taylor said that the meaning is determined by how, quote, the term is used in the criminal code of most states. The other concern at ETN was about under-inclusiveness, saying that Congress never intended the law to apply to conspiracy convictions in one third of the states. Again, the Supreme Court and Moncrief rebuffed this exactly. The court said offenders may avoid aggravated felony status by operation of the categorical approach, and that an attack on that under-inclusiveness is no more than an attack on the categorical approach itself. Even the Fourth Circuit is backed away from ETN. I'm sorry? Even the Fourth Circuit, apparently, is backed away from ETN. In McCollum. Correct. At least sort of. Somewhat, yes. Kind of, sort of. It's the same author, so. Correct. And so if we look at what's at play here, the removal order indicated 1101A43FJ and U. It's our understanding that F and J are off the table. The government did not address J whatsoever. And when they discussed F and U, they said the only relevant challenge here is U. That's at the government's brief page 33. And so if we look at what the statute of conviction 1959A6 requires versus U, it is a categorical mismatch. The generic definition of conspiracy under U requires an overt act. By 40 of the 54 jurisdictions, which again, Judge Roth is what you said in Graves, is the most important factor. It's also what the Supreme Court says. We also walked through the analysis for 1959A6 does not require an overt act. And there's no challenge to that analysis in the government's brief. For use, attempted use, or threatened use, each of those require an overt act. Conspiracy simply does not. And the Gore case from the Fifth Circuit says that you can commit conspiracy without any use, attempt, or threat. Switching gears a little bit, I'm troubled enough to ask Ms. Loma about this. The BIA focused on a concept I never heard of in this context before, objective evidence. They say even though the petitioner was credible and two IJs found him to be credible, that wasn't enough because the BIA said that there wasn't any objective evidence. Do you have any idea what they mean by that? If someone's found to be credible, that in addition to credibility, you need to introduce objective evidence? Have you seen that used that way before? I'm not aware of that, and it was concerning to us as well. Mr. Quinteros marshaled evidence from an expert who the first IJ said was unbiased, reliable, credible. He marshaled evidence from our own government, the State Department report, which certainly is objective. And he also marshaled evidence from the Harvard Law School study. None of those is Quinteros himself, but it's an independent expert, the State Department, and an independent study conducted by Harvard Law School. It seems to me the issue is credibility. If the evidence, that's like saying that if you have a one-on-one rape case, you can never get a conviction because the victim will never be objective. Her identification can't possibly be accepted, even though she may be credible because she's not objective. We agree with everything you're saying. It's disturbing to us as well, and I think that's part of the reason why when we look at what the board below did. Now, the first IJ in 2015 heard his expert speak, heard all the evidence, and it came to the conclusion that there is a likelihood of torture. The board's first decision then adopted and affirmed that decision on the torture aspect. Then the case comes up to this court, gets remanded in light of the Meyer decision. The IJ again below says, yes, the torture prong is met, and it's only after those three agency decision-makers said, yes, the torture aspect is satisfied here, does the board then below come in and say, actually, no, we're going to reverse all of that for lack of objective evidence. And on the cat, the claim. We should be due. Should we? I mean, arguably, we should be mandated again to the BIA, which knowledge Muslim about this. I'm speaking only for myself here. The way they handled the appeal the first time, it seems to me that can't help but cause some concern, but I don't think the record would support if we would agree with your arguments, the legal arguments on aggravated felon and the rest. I'm not sure this record supports our, at least under the cat, granting relief as a matter of law. It seems to me the record doesn't support that or does it? Two responses, Your Honor. First of all, the court does not need to reach that because of the aggravated felon issue. Second of all, as in the King case, which, which judgment do you join? This court did take the decision from the BIA and said the evidence here could only support one outcome. And the court did not remand. And we think that's what you should do here. Given the evidence that we have identified in the brief and that is in the record, there could only be one outcome here for the cat, the claim. And that's based on Mr. Quintero's testimony, his experts' testimony, State Department reports, numerous narratives in the Harvard Law School study. All of that evidence together supports only one outcome. We don't think the government has marshaled any evidence to counter that. And we know that Mr. Quintero's, and may I finish please, has the burden, but we think he has easily met the burden. And I just add, before I sit down, that he only has to prove a likelihood of torture generally. And he's facing harm from MS-13, his former gang, MARA-18, the rival to his former gang, and the police. And so he doesn't need to prove likelihood from any one of those three, just a likelihood of those three collectively. And we think he has met that here. Let me ask you a question, if I may. In determining that the BIA appears to have ignored evidence, can we simply say that any decision made on that is wrong and we will decide the opposite way? Or do we have to send the case back to the BIA and say, look, there was this proof of evidence on what was likely to happen. And you don't say anything about it. And you may disagree with it, you may not. But you've got to put out your consideration so on appeal to us we can understand what went on. So we have to remand it to the BIA. Okay. Which choice should we take if we were so inclined? Two brief responses there, Your Honor. First of all, as in can, the court can take it itself. And we think that is the appropriate outcome here. You've seen what happened when the court remanded for Myrie. We just don't think respectfully that the board applied Myrie correctly and ignored lots and lots of evidence. And that's been two years since the last remand. So Mr. Quinteros has been in prison for five years after a criminal sentence ended. And potentially, if there's a remand and the board sent it down to the IJ, we're looking at potentially another two years before the case comes back up and he's going to lose almost a decade of his life in withholding proceedings only, waiting for an Article III court to look at this evidence. So that's response number one. Number two is argument four of our opening brief looks at what this court can review. And while we agree that the court cannot review factual claims, once Mr. Quinteros has raised a legal or constitutional claim, which he has on numerous fronts here, then all evidence is open and the court has to ensure that no reasonable fact finder could find to the contrary. And again, that's argument four of our opening brief. And we think that once the court says, yes, he has raised a legal claim that gives us jurisdiction to review, the court then can review the evidence again, as it did in the can case. May it please the court. Virginia Lum for the United States. Your Honor, this court lacks jurisdiction over this case. Petitioner completely ignores Section 1252A2C, which states there's no jurisdiction over criminal aliens covered under 8 U.S.C. 1227A2A3, which is over aggravated felonies. But we have jurisdiction to determine whether or not this is an aggravated felon. That is correct, Your Honor. Okay. So if you go to 110143F, a crime of violence, and it states as defined in Title 18, 16A defines a crime of violence as an offense that has an element, the use, attempted use, or threatened use of physical force against the person or property of another. And petitioner has never argued that 1959A6, which he pleaded guilty to and has never challenged on these grounds, he's never said that this does not satisfy the generic elements of the crime of violence under 16A. Instead, he asked this court years later to remand based upon DMIA, which invalidates 16B. We're not talking about 16B here, Your Honor. We're talking about 16A. Let's just review the bidding. Clearly, 16A, if we get to the merits, would be implied. But are you agreeing that we can get to the merits on that issue? As a matter of law, yes, Your Honor. Okay. So then when your argument is that we don't have jurisdiction, it relates to what? Relates to he's a criminal alien convicted of a crime of violence under 16A. And he's never challenged. He's 1959A, which he pleaded guilty to, is whoever threatens to commit a crime of violence against any individual in violation of the laws of any state for, and I'm. I'm lost here. What didn't he do that should cause us to say there's no jurisdiction? He doesn't challenge 16A, Your Honor. And how would he go about challenging 16A, at least on the initial form, the I-851? Those are three factual issues there, right? Correct, Your Honor. And so how do you go, what's the process one should go about to challenge the legal issue of whether this is an aggravated felony? Exhaustion. He hasn't exhausted that issue. How would he exhaust it? He would have, through the expedited removal in the FARO, which applies in this case because he's an inadmissible alien, the FARO, F-A-R-O, he did not challenge that. He checked the box indicating I challenge this, but as you noted, he attached no evidence as required, and it states clearly, you must respond to the above charges in writing. But the immigration judge brought it up. Therefore, it's before the immigration judge. It was reviewed by the BIA, and even though he didn't attach any papers, isn't the fact that the immigration judge considered the issue all that's needed? Your Honor, I'm not sure where Petitioner states that he challenged it before the IJ. We don't see that he challenged. The question, though, is whether he challenged it or not by attaching documents. It was considered by the IJ. It was considered by the BIA. So aren't we just kind of dancing on a feather here? Well, the board found he was removable under this, and he never challenged that after that, Your Honor. The only time he challenges it now is years later. If he never challenged the fact of his removability, why are we here right now? I beg your pardon? No, Your Honor. That is our whole point. We should not be here because there's no jurisdiction, and what Petitioner — You're saying no jurisdiction. But what Judge Roth asked you in terms of this exhaustion argument, if the IJ considered it, if the BIA considered it, isn't that enough to put it before us? You're saying that they can consider it, but he can't challenge their decisions. That's what you're arguing. That is correct. There is no judicial review of that decision whatsoever, and it's a legal matter. It's not a factual matter. It's a legal matter. Of course, you can investigate it as a matter of law to see if this was correctly done, Your Honor. But we do have jurisdiction over legal decisions of the BIA, don't we? That is correct, Your Honor. But you just agreed that this was a legal decision, a legal issue. Regarding whether — if it were raised appropriately. However, we're stating he did not follow the procedures. He doesn't have to do anything, does he, if the IJ brings up the topic and says it's an aggravated felony? Correct, Your Honor. But then the board affirmed that, and he did not challenge that further. And all throughout, he has not challenged that. And what he's doing right now — Do you agree? I mean, he appealed the board decision. Correct, Your Honor, but he did not appeal it. He appealed it, not challenging that he was an aggravated felon. He appealed it based on the findings, the factual findings weighing the evidence in the CAT review. And that's what he's doing now before you also. And those findings are not — you — he's asking the court to re-weigh the evidence regarding the CAT. Let me ask you what I asked Mr. Andrews, because it seems to me that gets you a due process. It's not framed that way, but the BIA wanted him to introduce objective evidence. His evidence was credible. That's not good enough. It has to be objective. Do you have any idea what in the heck that means? Well, if you look at the transcript, Your Honor, again — Look at the transcript. He testified, an expert testified, and maybe the object — I guess the BIA said the expert is not objective because the petitioner called the expert. But if we go down that road, we're going to be tossing out an awful lot of evidence introduced by governmental experts. I don't think they want us to go down that road. No, Your Honor. As you noted, the board did find the expert was credible. However, the expert himself testified that a lot of his argument was based on the fact that he had a tattoo. He would be recognized as a former gang member 13 years ago, even though — He testified he knew at least 70 people who knew him, not from 13 years ago, but that as of contemporaneously, he knew at least 70 former gang members who knew him, who could finger him, and he was sent back to El Salvador. That's what he claimed. The impact of the tattoos, uncontroverted. There's even evidence in the report that was submitted that it's gotten — the gang situation is so bad that they're now discouraging people from getting tattoos because everyone realizes if you've got a tattoo, that ties you to a gang. That's correct, Your Honor, that those reports state that. But again, the expert who testified with respect to those reports and to his own knowledge of petitioners stated this was a tattoo. He didn't even know where it was. It doesn't matter because there's evidence that people were stripped to see if they have any tattoos. It doesn't matter if it's on the forearm or the butt. This is a tattoo of the New York Mets, Your Honor. Right. But you said they didn't know where it was, not where it was, but where it was. New York Yankees, I think. Well, Your Honor, again, we're getting into weighing in evidence. The board in its decision was very distinct and specific about its weighing of the evidence. Well, I'm not sure you're talking about weighing of evidence. It seems to me that if you're going to have a hearing, you're entitled to some sort of thing that at least passes for a hearing that would equate with Fifth Amendment due process. And I'm troubled, and I mentioned it to Mr. Andrews, and I told him I was going to mention it to you. I'm troubled by the fact that you have credible evidence, which is then rejected because of the source of the person bringing in the evidence. It wasn't, quote, objective, close quote. Even though it's totally credible and totally believable, it's totally ignored by the BIA because of some concept of objectivity, which is Kafka asked it best. I have trouble in that. You can say it's a factual argument. But to me, it's a legal argument because it gets to whether or not he had anything that would be even dressed as a hearing. And so far as Fifth Amendment due process is concerned. Well, Your Honors, it stated that the in weighing the evidence, the board stated. You keep saying weighing, which gets you into the factual dispute. We cannot get into that. I agree with that. Right.  My problem is not the credibility, which I cannot get into, as you're probably arguing. But he's already been found credible by the hearing examiners. Two IJs found the guy credible. But yet his evidence is rejected because it's not because of the source of the evidence. And that boggles my mind because I've never seen that kind of concept before. Well, the again, the board had to look at all the evidence, the totality. That's the issue. It did, Your Honor. And it states what all the objective evidence that the government had stated. All the reports indicate that there is a lot more policing and less of attacks on former gang members since the hearing. The only thing you have in your favor in terms of the evidence is the issue of whether or not the fact he left the gang because of his Christian affiliation would be something that would undermine his argument that the government is going to acquiesce. It may well be the gang is going to acquiesce because there's some evidence that suggests that that's become more of it doesn't necessarily mean you're going to take your life in hand and leave the gang if you leave for religious reasons. There's some evidence of that. To me, that's the only evidence that's there that would suggest the BIA considered anything other than what it wanted to consider to get the result to the result that it was meant to get to. That's only my opinion. I haven't discussed it with my colleagues. I don't pretend to be speaking for them. Well, again, the board took into consideration the petitioners own own testimony. Right. What was that? What was that? That testimony was that, yes, I do have a tattoo. That is a New York Mets tattoo. And it is not a baseball thing. I'm not either. I know that. I know that's in the Yankees. It's the Yankees tattoo. Oh, sorry. It's New York. I don't even know if it's baseball or football, frankly. And he testified it is not a gang tattoo. This was, again. Any tattoo, the evidence is, the uncontradicted evidence is, any tattoo would be taken as a sign of gang affiliation. He doesn't have to have tattooed into his arm. That is correct, Your Honor. But he testified that it is not, it is easily coverable by shirts. And what happens if he's stripped naked? The evidence suggests that they routinely strip people naked to find out if they have any tattoos. Well, again, it's not necessarily a gang-related tattoo. We're going around in a circle. Why don't you finish your argument? Can I just get into the merits? Yes. 1959A6. The question is, is it a categorical mismatch or match for the definition of aggravated felony under 1101A43? In other words, it really comes down to me, is an overt act a required element? Overt is not required, Your Honor. It's not required, but that's your statement. But what do I look to? Do I look to the common law, which doesn't require it, or do I look to the contemporary standards, which appears in 36 out of 50 states or 40 out of 54 jurisdictions, if you include territories, to require an overt act? Your Honor, you do not need an overt act. And this Court has found in the Douglas case. You're not answering the question. What do you look to to make that conclusion? You look to the common law. And the common law does not require an overt act. Judge Roth has noted in the Graves case that it looks like, well, actually we hope that you look to contemporary standards in these types of cases. Why would that be wrong? I mean, it looks like the trend when you look to the states, the territories, and the treatises is that overt act for a conspiracy or whatever is under you, attempt for a conspiracy requires some furtherance of the conspiracy or some furtherance, some act to carry out the attempt. Why should we not follow that trend and also our own case in Graves? Well, Your Honor, I think the mere fact that other states are doing something doesn't necessarily mean you have to follow it. I think you wisely do investigate and see how each is applied in each circumstance. What do you do with the Garcia-Santana analysis of the Ninth Circuit? They went through this body of law that my colleague is referring to. It included that an overt act is required. Well, we also submit, Your Honor, even if an overt act were required in this case, petitioner did testify that I did conspire to use a weapon, a bat, to in furtherance of committing violent acts. So if you decide in that arena to require an overt act, despite your finding in Saluadin, which states if the statute does not specifically require an overt act, an overt act is not required. But if you do choose to go the route of the other states within their fact patterns, then we submit that there is an overt act in this case. And what is that? In his testimony in the administrative record, it states when he, excuse me, when he admitted as a gang, he fought rival members but didn't murder or stab them, but admitted pleading guilty to planning to use a bat to assault. So he never showed up, right? He never showed up. But the completion of the crime does not invalidate his conspiracy or overt act in admitting that, Your Honor. And that's there in the record. Case six is for attempting or conspiring to commit a crime involving maiming, assault, a dangerous weapon, et cetera, or assault resulting in serious bodily injury, et cetera. And the conspiracy was there when they said they were going to do it, but he didn't do anything after that. So what is the overt act that he did other than just be in the room when they said they were going to do this? The overt act is his mission that he plans to do this along with the gang members. But that's being in the room when the conspiracy was hatched, right? That is correct, Your Honor, but he agreed to it. And that's what he pled guilty to. And he doesn't deny that. He pled guilty to conspiring, but if an overt, what would the overt act, just the mere agreement as the overt act? That is correct, Your Honor. That makes no sense, because then those jurisdictions that say in order to have a conspiracy, i.e. an agreement, you need an overt act, it's circular. You need an overt act, and your agreement is the overt act. That cannot possibly be. Well, Your Honor, you can't have a conspiracy to do a criminal act unless you relate it to the criminal act. For example, you also can't, are you saying that you cannot have a conviction for conspiring to murder someone unless they actually murder them? No, no, no. If you go out and buy a gun, or if you, in this case, if you went out and bought a baseball bat. Or you do a stakeout of where the attack's going to occur, something like that. True. But here he, in his own testimony, he states, I agreed to, I conspired and agreed with the gang to assault people with weapons. And that's the overt act, if it is required. When you look at Lefebvre, the treatise by Lefebvre on criminal law, it says that an overt act constitutes a substantial step toward completing the offense. And after he was in the room when the conspiracy was hatched, to use my word, what was the substantial step toward completing that overt act? The agreement, Your Honor. That's the rabbit in the hat. First thing, the Monty Python Bureau of Arguments, Google that when you get a chance, because this is starting to remind me of the Bureau of Arguments. Just when you get a chance on your computer, Google Monty Python Bureau of Arguments, because that's where we are right now. Thank you, Your Honor. Okay. Thank you. In medieval times, they called it counting angels on the head of the head. The only Monty Python I remember is the Bureau of Story Watch. Yes. Please record a couple of brief points in response. First of all, the beauty of the categorical approach is constitutional notice. Unless anyone ever referred to the categorical approach. Well, it's beautiful. It's a mess. We're not looking at the underlying facts whatsoever. And the Supreme Court's been clear about that, that we are looking only at the statute of conviction and the generic definition. And we are not looking at what the actual offense was. And that's undisputed Supreme Court law or is undisputed until a few minutes ago. A few other brief points, Your Honor. Let me ask you a question. I get the sense from the government's argument that if Mr. Quinteros is committed an aggravated felony, we have no jurisdiction to hear this appeal. Can he still raise the Convention Against Torture? He can. He has raised and it wasn't framed as due process, but he has raised quintessential legal process errors. Questions of law that this court has said over and over again are issues that the court can address in the cat posture. Anyone who is subject to deportation can raise cat. They can raise a cat. Whether this court has jurisdiction to hear it depends on what the issues on appeal are. Up here, Mr. Quinteros has raised ignoring evidence, which is a legal error, has raised applicability of the wrong legal standard, which the government's cases admit is a legal error. The BIA looked at efforts, not efficacy. That's the wrong legal standard. Now, we can't deport someone where they haven't had due process where the BIA isn't even applying the correct legal standards. So even if you do not agree with us on the aggravated felony issue, there still is jurisdiction to consider the cat claim based on the legal, the legal process errors that occur below. We're clear. This goes back. I didn't ask you quite as often as Judge Rosses did, so that we're clear. The bars to relief in the form of asylum and withholding removal are not bars for relief under the Convention Against Torture. I'm sorry, could you say that again? The bars that preclude relief for asylum or withholding removal, the aggravated felony category of bars, are not bars to applying for relief under the Convention Against Torture. That's correct. Nevertheless, that's what we're trying. That's correct. And the government a couple of times mentions particularly serious crime. And if the court finds that his conviction is not an aggravated felony, then the particular serious aspect of it also goes away, too. Briefly, the fight on Section 16A is something that Mr. Quinteros did not prepare for, because the first I.J. said, for the respondent's crime to constitute a crime of violence for immigration purposes, the crime must fit the definition at Section 16B. And that's on JA 120. DeMaia invalidated 16B. So after that, there was no basis in this record to remove Mr. Quinteros. There was no analysis of Section 16A, and the government didn't respond to our analysis of Section 16A discussing use, attempted use, threatened use, and why those require an overt act and why 1101 or, I'm sorry, why 1959A6 does not require an overt act. And in terms of the government, their argument about the BIA looked at all of the evidence, I would just direct your honors to page 29 of our reply brief that has the chart of what the board says and what the evidence was. And it's clear that those are just two examples where the board clearly ignored evidence in the record. Those two have to do with torture, I believe. But then there was multiple pieces of evidence, and this is an argument, 2A and 3C of the opening brief, and again reiterated in the reply of evidence that was ignored. And I would, one more point, your honor, reiterate again that Mr. Quinteros has been locked up for over 60 months, five years after the criminal sentence ended. This court can decide the aggravated felony issue. It is a purely legal issue for which the court would owe no deference to the board's decision if it were to remand on that issue. But if you do not agree with us on the aggravated felony issue, we would urge you also to look at the evidence yourself, as the court did in the Kang. Again, it's been two years since Mr. Quinteros was last here, and the court remanded the case, and he is sitting in prison in the United States as opposed to being free in El Salvador because he does fear for his life. Where is he right now, in York? Yes, he's in York. We respectfully request that you grant the petition for release. Thank you. Thank you, your honor.